OPINION OF THE COURT
Michael D. Stallman, J.
In this CPLR article 78 proceeding, petitioners seek to set aside publicly bid contracts awarded to other successful bidders for the repair of cafeteria and kitchen equipment within New York City public schools. Petitioners, which were successful bidders on only part of the project, contend that the project concerned repair of a public work, within the meaning of Labor Law § 220. Petitioners therefore assert that the bid solicitation should have contained a prevailing wage schedule, and that the other bidders should have submitted bids based on a prevailing wage schedule.
Background
On or about October 21, 2010, the New York City Department of Education (DOE) posted on the Web site of DOE’s Division of Contracts and Purchasing a standard form of contract request for Bid No. B1644, i.e., a bid solicitation for the repair of cafeteria and kitchen equipment. {See Aden affirmation, exhibit B.) The e-mail notice of the solicitation informed prospective bidders that vendors “interested in participating in this procurement [could] download the solicitation and requirements” from DOE’s vendor portal Web site. {See id.)
According to a DOE spreadsheet, petitioner Acme American Repairs, Inc. (Acme Repairs) downloaded the solicitation on October 26, 2010; petitioner Acme American Refrigeration, Inc. (Acme Refrigeration) downloaded the solicitation on November 2, 2010. (Rishty affirmation, exhibit B.)
It is undisputed that the bid forms promulgated did not contain a prevailing wage schedule {see Stahn aff, exhibit A; see also Rishty affirmation, exhibit A). Petitioners argue that the *394 contracts for which DOE sought bids involved “public work,” within the meaning of Labor Law § 220. Consequently, petitioners assert that the lack of a prevailing wage schedule in the bid specifications violated Labor Law § 220 (3) (c).*
Acme Repairs and Acme Refrigeration submitted proposals for work under Bid No. B1644, purportedly using union-scale labor rates in contracts they had with the International Brotherhood of Electrical Workers, Local 3. (Stahn aff, exhibits F, G.) According to a “Bid Received Log,” both bids were received on December 13, 2010. (Rishty affirmation, exhibit D.)
Petitioners allege that Acme Repairs was advised by e-mail on January 10, 2011 that it had been awarded part of the project under two sections of the bid. (Stahn aff, exhibit H.) Petitioners concluded that the e-mail implied that Acme Refrigeration had not been awarded any part of the project. Petitioners allege that the other successful bidders under Bid No. B1644 were respondents Summit Restaurant Repairs and Sales, Inc., Mico Cooling Corp., Ace Mechanical Services Group LLC, and AM Motor Refrigeration Services Corp., doing business as AM A/C & Refrigeration Corp. (Stahn aff 1Í13.)
By an e-mail dated March 16, 2011, petitioner Acme American Group advised DOE’s director of purchasing
“It has come to our attention at Acme, that the bidding process regarding the above referenced Bid Request was irremediably compromised leading to an illegal result and unfair treatment to our Bid Proposal. We call to your attention Labor Law 220 (3) which mandates that the prevailing rate schedule be annexed to and form a part of the contract . . . When we submitted our Bid Request, we did so following the prevailing rate as mandated and in compliance with the law. We played by the rules and ended up unfairly outbid by another entity that, intentionally or not, did not follow the mandates required by the law.” (Stahn aff, exhibit I.)
On March 25, 2011, Acme Repairs purportedly served copies of a notice of claim upon Corporation Counsel, the Office of the *395 Comptroller of the City of New York, and DOE. (Stahn aff, exhibit J [Ochani aff lili 1-3].) Acme Repairs and Acme Refrigeration were named as claimants in paragraph 1 of the notice of claim. (See Ochani aff, exhibit B.) The notice of claim described the nature of the claim as “[t]he failure to follow mandatory bidding procedures resulting in an illegal and unfair award of a City of New York contract in violation of Labor Law [§ ] 220 (3) associated with the Request for Bids Serial No. B1644.” (Id.)
By an e-mail dated April 6, 2011, DOE stated, in pertinent part, “A review of Labor Law 220/ prevailing wage has determined that LL220 prevailing wage rates do not apply to the scope of work required for the repair of cafeteria and kitchen equipment (RFB 1644). As such, awards have been made to the lowest responsive/responsible bidders.” (Stahn aff, exhibit K.)
On May 9, 2011, petitioners commenced this article 78 proceeding by order to show cause with a verified petition, naming as respondents DOE, the Board of Education of the City of New York, the executive director of the DOE’s Division of Contracts and Purchasing, the Comptroller of the City of New York, and the successful bidders on Bid No. B1644. Petitioners assert that the Comptroller should not register any contracts for the work covered by Bid No. B1644 (and if any contracts were registered, the registration and any award of contracts should be annulled), that no funds should be encumbered to provide for payments under any contract awarded, that the bidding process should be declared void, and that the work be submitted for re-bid in accordance with Labor Law § 220.
The verified petition asserts three causes of action. The first seeks a preliminary and permanent injunction against respondents from acting on any contracts based on the specifications of Bid No. B1644; the second seeks an order directing respondents to prepare and distribute revised specifications, including the prevailing wage schedule; the third seeks a declaration that the specifications in Bid No. B1644 are unlawful and made in excess of DOE’s and the Comptroller’s authority, and therefore may not be used to solicit bids or award any contracts.
Petitioners’ order to show cause also sought a temporary restraining order, which this court denied.
On behalf of DOE, the Board of Education, the executive director of the DOE’s Division of Contracts and Purchasing, and the Comptroller (collectively, the City respondents), Corporation Counsel moves to dismiss the petition pursuant to CPLR 7804 (f) and 3211 (a) (1), (5) and (7), on the grounds that *396 the petitioners are bound and estopped by their contract, and waived their right to challenge the bid solicitation, and that the petition is time-barred.
AM Motor Refrigeration Services Corp., doing business as AM A/C & Refrigeration Corp. (AM Motor Refrigeration) separately moves to dismiss the petition as time-barred, and it also argues that petitioners failed to bring the purportedly illegal bid terms to the attention of DOE before it submitted bids. Respondent Mico Cooling Corp. (Mico Cooling) also cross-moves to dismiss the petition as time-barred. The motions and cross motion were finally submitted on August 24, 2011. This decision addresses both motions and the cross motion.
Discussion
CPLR 217 (1) provides, in relevant part, that “a proceeding against a body or officer must be commenced within four months after the determination to be reviewed becomes final and binding upon the petitioner.”
“An administrative determination becomes ‘final and binding’ when two requirements are met: completeness (finality) of the determination and exhaustion of administrative remedies. ‘First, the agency must have reached a definitive position on the issue that inflicts actual, concrete injury and second, the injury inflicted may not be . . . significantly ameliorated by further administrative action or by steps available to the complaining party.’ ” (Walton v New York State Dept. of Correctional Servs., 8 NY3d 186, 194 [2007] [citations omitted].)
Here, the City respondents and AM Motor Refrigeration argue that the statute of limitations began to run from the date that petitioners received notice of the alleged irregularity that they are challenging. Thus, they argue that the statute of limitations began to run on October 26, 2010, when Acme Repairs downloaded the bid specifications that did not contain any prevailing wage rate schedules. Mico Cooling argues that the statute of limitations began to run by no later than December 14, 2010, because DOE’s request for bids became “final and binding” on petitioners when they submitted bids on that date. Mico Cooling reasons that, once the bids were submitted, there was no further action that petitioners could take, short of seeking judicial relief, to have DOE amend the request for bids.
Petitioners argue that a bidder is aggrieved only when it loses the potential business, that is, when a bidder learns that it was *397 not awarded a contract, because a bidding company has no reason to appeal a determination until it has learned that it was not a successful bidder. Because Acme Refrigeration learned that its bid had been rejected, at the earliest, on January 10, 2011, petitioners argue that the petition is timely. Petitioners also argue that, because DOE’s January 10, 2011 e-mail indicated that the awards were still subject to an evaluation process, the decision made on January 10, 2011 was not final and binding upon petitioners. Lastly, petitioners maintain the article 78 petition could not have been made sooner, because provisions of the DOE contract purportedly required an administrative application if there were any issues with the contract award, and because DOE stated on April 6, 2011 that the work solicited under the bids was not subject to Labor Law § 220, a little over a month before petitioners commenced this article 78 proceeding.
Council of City of New York v Giuliani (5 AD3d 330 [1st Dept 2004]), and Legal Aid Socy. v City of New York (242 AD2d 423 [1st Dept 1997]), upon which the movants and cross-movant rely, are instructive. In Council of City of New York, the petitioners challenged a contract awarded to a bus company resulting from a competitive bidding process administered by the New York City Economic Development Corporation, which the petitioners argued constituted a franchise agreement that should have followed the procedures of the City Charter pertaining to franchises. The Appellate Division, First Department, affirmed the lower court’s dismissal of the petition as time-barred. The Appellate Division reasoned that “petitioners, by reason of the municipal respondents’ issuance of a request for proposals (RFP) suffered an actual, concrete injury. The RFP’s issue without an authorizing resolution by the City Council was itself an act clearly bypassing the franchise process required by the City Charter.” (id. at 331 [citations omitted].)
In Legal Aid Socy., the Legal Aid Society brought a combined “hybrid” action/article 78 proceeding to challenge its exclusion from parties permitted to submit a contract proposal to provide services to indigent clients throughout the City of New York. The Appellate Division, First Department, ruled that the first cause of action, which challenged the City’s effort to bar the Society from the contract solicitation process altogether, was time-barred. The Appellate Division stated, “petitioners’ grievance dated not from the award of the new contracts in June 1996, but from the issuance of that unambiguous exclusionary *398 language in the RFP addendum eight months earlier.” {Id. at 426.)
Like the petitioners in Council of City of New York, petitioners here suffered an actual, concrete injury when they learned that DOE’s Bid No. B1644 did not contain a prevailing wage schedule in its specifications, which petitioners contend was in violation of Labor Law § 220 (3) (c). Because the bid solicitation did not include a prevailing wage schedule, other bidders could (and presumably did) submit bids based on wages that were not based on any union-based wage rate. As petitioners themselves indicate, their belief that the bids should be based on union rates put them at a competitive bidding disadvantage to those who submitted lower bids that were not based on any prevailing wage schedule. This disadvantage occurred well before the successful bidders were notified on January 10, 2011.
Like the RFP in Legal Aid Socy., which unambiguously excluded the Legal Aid Society, DOE’s bid solicitation clearly did not include any prevailing wage schedule. Thus, petitioners’ claim that the bid solicitation was in violation of Labor Law § 220 (3) accrued on the date that petitioners knew or should have known of the contents of the bid solicitation, and not on the date of the award of the contracts. Thus, the statute of limitations began to run on October 26, 2010 as to Acme Repairs, and on November 2, 2010 as to Acme Refrigeration.
As petitioners point out, the Appellate Division ruled in Legal Aid Socy. that a portion of the second cause of action in that case was not time-barred, the portion which was based on the Mayor’s alleged refusal to follow the restriction in the Procurement Policy Board rules against awarding multiple contracts for indigent services except where “necessary for adequate . . . service.” (Legal Aid Socy., 242 AD2d at 426-427.) For that portion of the second cause of action, the claim did not accrue “until the actual award of the new contracts in June 1996.” {Id.) However, as the City respondents point out here, the portion of the second cause of action which was timely in Legal Aid Socy. is factually and legally distinguishable from the contentions of the petition in this article 78 proceeding.
Matter of Boston Culinary Group, Inc. v New York State Olympic Regional Dev. Auth. (18 AD 3d 1103 [3d Dept 2005]), which petitioners cite in support of the argument that the limitations period began to run on the date the contracts were awarded, is inapposite. In Matter of Boston Culinary Group, Inc., the petitioner challenged the respondent’s determination *399 that another company had submitted the winning bid related to a request for proposals to operate food and other concessions at the respondent’s facilities. The Appellate Division, Third Department, affirmed the Supreme Court’s ruling that “the four month statute of limitations began to run, on May 18, 2004, the date the award was made and petitioner was so advised.” {Id. at 1104.) However, as AM Motor Refrigeration points out, the petitioner in that case challenged the adequacy of the successful bidder’s bid, and thus, a challenge to a particular, identifiable vendor’s bid could only occur once the identity of that bidder is known. Unlike Matter of Boston Culinary Group, Inc., petitioners here are challenging the bid solicitation process itself as flawed. The remaining cases on the statute of limitations issue that the petitioners cite do not involve disputes over publicly bid contracts.
Petitioners’ argument that the motions should be denied because they need discovery is unavailing. In an article 78 proceeding, the parties are not entitled to discovery as of right. (CPLR 408.) That the respondents do not all agree as to the correct date that the limitations period began to run does not warrant discovery. Discovery as to when the statute of limitations period began to run is not needed, given that the dates that the parties contend are accrual dates are based on dates that are already known to all parties, and what occurred on those dates is undisputed. For the reasons previously discussed, the statute of limitations of this article 78 proceeding began to run on October 26, 2010 as to Acme Repairs, and on November 2, 2010 as to Acme Refrigeration.
Given these dates, the discovery that petitioners seek — to show that they preserved and reserved their rights to challenge Bid No. B1644 — would not be relevant to determining the accrual date for statute of limitations purposes. The documents upon which petitioners rely as evidence of their reservation of rights postdate the dates when the statute of limitations began to run, and petitioners did not commence this article 78 proceeding until well after four months had passed since October 26, 2010 and November 2, 2010.
Therefore, the motions and cross motion are granted to the extent that the petition is dismissed as time-barred. In light of the court’s determination that the petition is time-barred, the court does not reach movants’ alternative arguments of waiver and estoppel.
Although the petition is dismissed on the ground of timeliness, this court has no concerns about whether the contracts to *400 be awarded under Bid No. B1644 were subject to Labor Law § 220 (c) (3). As AM Motor Refrigeration indicates, the Office of the Comptroller of the City of New York has long taken the position that maintenance and repair of various appliances located within a public structure does not constitute a “public work” within the meaning of Labor Law § 220 (3). (Arden affirmation, exhibit D.) This court has no occasion to question that longstanding interpretation.
Conclusion
Accordingly, it is hereby ordered that the motion to dismiss by respondents New York City Department of Education, the Board of Education, the executive director of the DOE’s Division of Contracts and Purchasing, and John C. Liu, Comptroller of the City of New York is granted; and it is further ordered that the motion to dismiss by respondent AM Motor Refrigeration Services Corp., doing business as AM A/C & Refrigeration Corp. is granted; and it is further ordered that the cross motion by respondent Mico Cooling Corp. is granted; and it is further adjudged that the petition is denied as time-barred and the proceeding is dismissed.

 Labor Law § 220 (3) (c) states, in relevant part:
“It shall be the duty of the fiscal officer, as defined in this section, to ascertain and determine the schedules of supplements to be provided and wages to be paid workers, laborers and mechanics on such public work, prior to the time of the advertisement for bids, and such schedules shall be annexed to and form a part of the specifications for the work.”